Evers Lee ATKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00466–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 18, 1994.

---

Charles Brown, Houston, for appellant.

John B. Holmes, Jr., Kimberly Aperauch Stelter, Carol Sandvick, Harris County, for appellee.

Before WILSON, COHEN and ANDELL, JJ.

## OPINION

WILSON, Justice.

The trial court conducted a motion to suppress evidence. During the hearing, Officer Kwiatkowski of the Houston police department testified he was an eyewitness to appellant, Evers Lee Atkins, abandoning baggies subsequently found by the officer to contain heroin. The fundamental issue presented is whether the baggies are rendered inadmissible as evidence because of the officer's entry, without probable cause, onto the curtilage of appellant's residence from where he viewed appellant drop the baggies. We affirm.

After the court denied the motion to suppress and, pursuant to a plea agreement, appellant pled no contest to possession of heroin. Finding two enhancement paragraphs to be true, the court sentenced appellant to 25 years in prison. Appellant argues in three points of error that: 1) Officer Kwiatkowski had no right to follow appellant into his home; 2) Officer Kwiatkowski had no

right to be at the rear of appellant's residence; and 3) Officer Zavala entered the home without authority.

The trial court is the sole judge of the credibility of the witnesses in a pretrial hearing and, absent a showing of an abuse of discretion, the trial court's findings will not be disturbed. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App.1986); *Delosreyes v. State*, 853 S.W.2d 684, 686 (Tex.App.—Houston [1st Dist.] 1993, no pet.). The evidence from the hearing will be evaluated on appeal in the light most favorable to the trial court's ruling. *Daniels v. State*, 718 S.W.2d 702, 702 (Tex.Crim.App.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986); *Delosreyes* 853 S.W.2d at 686.

Officers Kwiatkowski and Zavala of the Houston police department, acting on an anonymous citizen's tip that cocaine and heroin were being sold at 5408-½ Nichols, went to that address to investigate the complaint. The officers parked in a store parking lot in front of the house, which contained two apartments. Three or four people were sitting in front of the house when the officers arrived. Officer Zavala went to the front of the house and Officer Kwiatkowski walked around the side of the house towards the back door. Both officers were dressed in plain clothes and Houston police department raid jackets.

When Officer Kwiatkowski "first turned the corner" he observed appellant walk out the back door. According to the officer, the appellant appeared startled to see him, then dropped two clear plastic baggies to the ground, and returned to the house. Officer Kwiatkowski recovered the baggies and identified the substance in them as heroin by its distinct smell, "like battery acid." Officer Kwiatkowski followed appellant into the house and arrested him for possession of heroin. Officer Kwiatkowski called for Officer Zavala to assist him. Officer Zavala then entered through the front door of the residence. There were several persons in the house, and drug paraphernalia was recovered.[1]

Because the offense now before us is possession of heroin seized before the officers entered the home, we do not address appellant's first and third points of error concerning the entry of the officers into the home. The offense was committed and the drugs seized before the officers entered the home to make the arrest. We address appellant's second point of error, that Officer Kwiatkowski had no right to be on private property at the rear of the residence at 5408½ Nichols. Specifically, appellant argues that by being at the rear of the residence, the officer had entered the curtilage of the property without a warrant, and this entry violated appellant's reasonable expectation of privacy, making the seizure of the heroin illegal.

The fourth amendment of the United States Constitution and the Texas Constitution, Art. I, § 9, protect against unreasonable searches and seizures. This protection includes a home and the curtilage of the home as well. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984); *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Crim.App.1979). Determining whether a particular area is included within the curtilage of a home is determined by whether appellant had a reasonable expectation of privacy in the area. *Bower v. State*, 769 S.W.2d 887, 896 (Tex.Crim.App. 1989). Factors considered are: the proximity of the area to the home; whether the area is included within an enclosure surrounding the home; the nature of the use to which the area is put; and the steps taken to protect the area from observation by passersby. *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987). There is no reasonable expectation of privacy if the activity viewed by an officer is visible from the street, or the curtilage is open to the public. *Bower*, 769 S.W.2d at 897. The State does not contest whether Officer Kwiatkowski was in the curtilage of the house when he viewed appellant drop the baggies. Our analysis assumes that he was.

---

1. The defense's version of the events is substantially different. Appellant testified the officers burst through the doors without warning, and that he had not been in the backyard, but had just got up from sitting on a bed. He said, "I didn't have no drugs on me. No drugs."

The State argues the officers were not conducting a search when the officer saw appellant abandon the heroin; thus the law of search and seizure is not implicated in this case. If the officer was conducting a search, warrantless searches are presumptively not valid. *Fancher v. State*, 659 S.W.2d 836, 839 (Tex.Crim.App.1983). The State has the burden to prove the reasonableness of a search. *Russell v. State*, 717 S.W.2d 7, 9–10 (Tex.Crim.App.1986). There are a few narrow recognized exceptions making a warrantless search valid. These exceptions are: consent, response to an emergency, hot pursuit of a fleeing felon, presence of contraband that is about to be destroyed, and contraband about to be removed from the jurisdiction. *Vale v. Louisiana*, 399 U.S. 30, 34–35, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970); *Gonzalez*, 588 S.W.2d at 360. The State makes no argument that one of the exceptions is present in this case.

The State relies on a similar case in which an officer went to a defendant's home to conduct a narcotics investigation. *Long v. State*, 532 S.W.2d 591 (Tex.Crim.App.1976). The officer parked in the driveway, knocked first at the front door and then proceeded to knock at the back door. As he was walking back from knocking on the back door, the officer smelled marijuana from a window he passed. *Id.* at 592–93. This information was used to obtain a search warrant. *Id.* at 593. The Court held that the attempt to contact the inhabitants of the house is not a search implicating fourth amendment considerations. *Id.* at 595.

In another case, a game warden went to the front door of a residence, then went to the back door of the residence to knock and determine if anyone was home. However, after receiving no answer, the warden began searching for game violations. *Gonzalez*, 588 S.W.2d at 357–58. This searching, rather than returning to his car, made it an illegal warrantless search. *Id.* at 359–60.

The Court of Criminal Appeals in *Bower v. State*, 769 S.W.2d 887 (Tex.Crim.App.1989), found that no search was conducted because the evidence seen was in the public view. *Id.* at 899. In *Bower*, the Court specifically found that the officers' path did not "deviate

from the public pathway" because the only access to the front door was by way of the driveway going past the garage, which had unobscured windows. *Id.* at 897.

This Court has also recently decided a case which addresses a similar issue in *Delosreyes v. State*, 853 S.W.2d 684, 686 (Tex.App.— Houston [1st Dist.] 1993, no pet.). The officer in *Delosreyes* smelled marijuana emanating from a garage. The officer had walked up the driveway to the front door of the house. In *Delosreyes*, we specifically said the only way to approach the front door was by passing by the garage. *Id.* at 690.

In this case, the officer who went to the back door was not doing so after an unsuccessful inquiry at the front door, as in *Long*. However, there is no evidence in the case to indicate anything other than the reasonable inference that the officer was making a joint initial attempt with the other officer to contact the inhabitants of the house, as sanctioned in *Long* and *Gonzalez*.

Several pictures of the front of the house were in evidence, but none of the back, or of the path Officer Kwiatkowski took to reach the rear. The back yard was fenced in some manner, and there was disputed testimony about how difficult it was to get to the back of the house. There is no evidence anything blocked the view of the officer.

Our holding concedes the officer was intruding on the curtilage of the home in an area where privacy would be reasonably expected. The evidence indicates the way to the rear of the house was not an area to which the general public was invited. There is no testimony that the back door was in plain view. Neither was there testimony from the officers explaining the specific purpose of going to the back door before knocking at the front. The only explanation was they were investigating a citizen complaint about drugs.

However, we agree with the State that the officer's viewing of appellant's conduct was not a search. *Long*, 532 S.W.2d at 594–95. Finding no error, we affirm the trial court's judgment.