NUMBER 13-00-105-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


JEFFERY ALAN RICHIE
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 329th District Court


of Wharton County, Texas.


____________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Dorsey and

Rodriguez

Opinion by Chief Justice Seerden



 A jury found appellant Jeffrey Alan Richie guilty of possession of
a controlled substance, cocaine, and based upon enhancement findings,
assessed his punishment at thirty years imprisonment. In his sole
issue, Richie argues that the trial court erred in failing to suppress
evidence obtained during a warrantless search of Richie's person while
Richie was on private property. In response, the State argues that the
police officers were lawfully present on Richie's property and were
authorized to arrest Richie without a warrant because he committed a
crime in their presence and within their view. We agree with the State,
and affirm Richie's conviction.

Standard of Review


 In a suppression hearing, the trial court is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony. See State v. Ross, 2000 Tex. Crim. App. LEXIS 101 *6
(November 29, 2000); Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). The trial court may accept or reject any or all of a
witness's testimony. See Ross, 2000 Tex. Crim. App. LEXIS 101 *6-7;
Alvarado v. State, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). 

 In the absence of findings of fact, we view the evidence in the light
most favorable to the trial court's ruling and assume that the trial court
made implicit findings of fact that support its ruling as long as those
findings are supported by the record. Ross, 2000 Tex. Crim. App. LEXIS
*7-8. We review the trial court's decision on the motion to suppress in
this case through a bifurcated standard of review: we will give almost
total deference to the trial court's express or implied determination of
historical facts and review de novo the court's application of the law of
search and seizure to those facts. See id.


Background


 On September 10, 1999, Sergeant Terry Stamphill, a narcotics
investigator with the El Campo Police Department, received two
separate tips from individuals who claimed that crack cocaine was
being sold from appellant's backyard. These tips were consistent with
other confidential tips received by Stamphill, and further comported
with twenty to thirty private complaints that Stamphill had received
about appellant's residence over several months. Stamphill had
personally seen convicted drug dealers and users frequenting this
location. Therefore, Stamphill drove past Richie's residence to observe
any potential activity. 

 As he drove by Richie's residence, Stamphill saw a car pull into
Richie's driveway and into the backyard, and saw an individual in the
backyard approaching the car. Based on his experience working
undercover and the information he had received, Stamphill believed this
activity to be consistent with narcotics trafficking. At this juncture,
Stamphill returned to the police department and recruited the assistance
of other officers to help conduct a "knock and talk," which consists of
confronting a suspect with the accusations against him and asking him
for his version of events. Stamphill did not obtain a search warrant
because he did not believe his information was sufficient for probable
cause. Stamphill and three other officers returned to Richie's residence
in an unmarked car and pulled into Richie's driveway and into the
backyard.

 When they drove into the driveway, there was a car parked in the
driveway, and Richie and two other men were in the backyard. The
two individuals with Richie testified that the police jumped out of their
vehicle, ordered them to place their hands on the car, and rushed
directly to Richie and began struggling with him. In contrast, Stamphill
testified that he had begun talking to one of the individuals about the
complaints of drug trafficking when he saw Richie place a rock of crack
cocaine in his mouth and begin eating it. Stamphill attempted to stop
Richie but was unable to do so. Stamphill and another officer saw that
Richie had more crack cocaine in one of his hands. The officers arrested
Richie for possession, at which point they discovered a $5.00 bill in one
of Richie's hands and a plastic auto fuse box containing crack cocaine
in his other hand.

Analysis


 Both the Fourth Amendment of the United States Constitution and
article I, section 9 of the Texas Constitution forbid unreasonable
searches and seizures. See Brimage v. State, 918 S.W.2d 466, 500
(Tex. Crim. App. 1996); see also Mincey v. Arizona, 437 U.S. 385, 392
(1978). This concept is so fundamental that the law imposes a duty to
exclude evidence seized in such illegal invasions, both to discourage
lawless police conduct, and because courts may not endorse lawless
invasions of citizen's constitutional rights by permitting the government
unhindered use of the fruits of such invasions. See Terry v. Ohio, 392
U.S. 1, 12-13 (1968). This protection extends to both the home and
curtilage thereof. Oliver v. United States, 466 U.S. 170, 180 (1984);
Gonzalez v. State, 588 S.W.2d 355, 360 (Tex. Crim. App. 1979).

 The term "curtilage" has been defined as "the area around the
home to which the activity of home life extends." Oliver, 466 U.S. at
182 n.12. Determining whether a particular area is included within the
curtilage of a home is determined by whether appellant had a
reasonable expectation of privacy in the area. Bower v. State, 769
S.W.2d 887, 896 (Tex. Crim. App. 1989). Factors considered are: the
proximity of the area to the home; whether the area is included within
an enclosure surrounding the home; the nature of the use to which the
area is put; and the steps taken to protect the area from observation by
passers by. United States v. Dunn, 480 U.S. 294, 301 (1987). There is
no reasonable expectation of privacy if the activity viewed by an officer
is visible from the street, or the curtilage is open to the public. Bower,
769 S.W.2d at 897. Similarly, it is axiomatic that a law enforcement
officer has the same right as any common citizen to walk up to and
knock on the front door of a residence with the honest intent of asking
questions of the occupant. See Cornealius v. State, 900 S.W.2d 731,
734 (Tex. Crim. App. 1995); Davis v. State, 905 S.W.2d 655, 661 (Tex.
App.--Texarkana 1995, pet. ref'd). 

 The State does not contest whether the officers were in the
curtilage of the house when they viewed appellant eating the
substance. Our analysis assumes that the police were present in the
curtilage.

 Appellant claims that suppression of the evidence is mandatory
because the police officer's entry onto the property constituted trespass. 
See, e.g., State v. Hobbs, 824 S.W.2d 317 (Tex. App.--San Antonio
1992, pet. ref'd)(officers entering property and conducting a search for
marijuana constituted illegal warrantless search); Kann v. State, 694
S.W.2d 156,160-61 (Tex. App.--Dallas 1985, pet. ref'd)(illegal search
where officer entered suspect's carport and peered through a hole in
defendant's fence to see marijuana). 

 However, the officers' entry onto Richie's property did not
constitute an illegal search. See Bower v. State, 769 S.W.2d 887, 899
(Tex. Crim. App. 1989)(no illegal search where evidence seen in public
view and officers did not deviate from public pathway); Gonzalez v.
State, 588 S.W.2d 355, 359 (Tex. Crim. App. 1979)(no illegal search
where officers approached front and back doors of residence in an
attempt to contact residents); Long v. State, 532 S.W.2d 591, 594-95
(Tex. Crim. App. 1976)(no illegal search where sheriff knocked on front
and back doors of residence to investigate suspicious activity and
discovers scent of marijuana emanating from window); Davis v. State,
905 S.W.2d 655, 661-62 (Tex. App.--Texarkana 1995, pet. ref'd)(no
illegal search where officer followed suspect from street to front door of
suspect's residence and there saw a bag of marijuana in suspect's
mouth); Atkins v. State, 882 S.W.2d 910, 913-14 (Tex. App.--Houston
[1st Dist.] 1994, pet. ref'd)(no 

illegal search where officer approached back door of residence to
investigate complaints of narcotics trafficking and there saw defendant
dropping bags of heroin); Nored v. State, 875 S.W.2d 392, 396-97 (Tex.
App.--Dallas 1994, pet. ref'd)(no illegal search where officers entered
gated yard surrounded by privacy fence and walked through yard and
patio to defendant's door to investigate stolen property); De Los Reyes
v. State, 853 S.W.2d 684, 689 (Tex. App.--Houston [1st Dist.] 1993,
pet. ref'd)(no illegal search where officer walked up driveway and
smelled marijuana emanating from garage).

 Viewing the evidence in the light most favorable to the trial court's
ruling, we conclude that the trial court did not abuse its discretion in
denying Richie's motion to suppress. The police did not violate Richie's
reasonable expectation of privacy by entering his property. The back
yard was not enclosed by a fence, and was plainly visible from the
street. The officers were attempting to contact the residents of the
property to investigate complaints of drug trafficking. The officers
approached the individuals in the back yard through the same route
taken by others--by driving into the backyard from the driveway. 
Although the record indicates that some "no trespassing" signs may
have been posted on Richie's property, the evidence suggests that they
were not visibly posted in the area where the officers entered, and the
officers testified that they did not see the signs before entering Richie's
property.


 Finding no error, we affirm the trial court's judgment. 




 

 ROBERT J. SEERDEN, Chief Justice


Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 29th day of December, 2000.